Ellen C. Pitcher, OSB #81445
Alison M. Clark, OSB #080579
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
(503) 326-2123

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 3:13-cr-00452-JO-1** |
| **PLAINTIFF,** | **MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |
| **vs.** | |
| **OMAR MARTINEZ-RODRIGUEZ,** | **(Evidentiary Hearing Scheduled for January 6, 2014 at 10:00 a.m.)** |
| **DEFENDANT.** | |

The defendant, through his attorneys, Ellen C. Pitcher and Alison M. Clark, hereby

files this Memorandum in Support of his previously filed Motion to Suppress Evidence and

Statements.   Because the government obtained evidence outside of the scope of the

Clackamas County search warrant which led to the warrantless stop and search of

Mr. Martinez-Rodriguez's moves for an order suppressing evidence obtained beginning September 18 and culminating on September 25, 2013, with the stop of defendant Omar Martinez-Rodriguez in Marion County, Oregon. The defendant further moves for an order suppressing the subsequent warrantless search and seizure of evidence from his vehicle and person, as well as any statements obtained from him, as these are in violation of defendant's rights under the United States Constitution, Amendment IV.

## FACTS

On September 25, 2103, a car driven by defendant Omar Martinez-Rodriguez was stopped by law enforcement officials with the Clackamas County Sheriffs Office in Salem, Oregon, which is located in Marion County, Oregon. The alleged reason for the stop was a perceived traffic violation. After obtaining Mr. Martinez-Rodriguez's Mexican driver's license, a waiting canine was brought to the vehicle, and sniffed in and around the vehicle. Believing that the canine had alerted to drugs in the vehicle, Detective Mathew Fromme asked Mr. Martinez-Rodriguez for permission in search his vehicle, which was denied. Officers proceeded to search the vehicle, locating packages of suspected controlled substances, which were later confirmed to be methamphetamine.

After Mr. Martinez-Rodriguez's arraignment in federal court on drug trafficking charges, the government revealed to defense counsel that the investigation of Mr. Martinez-Rodriguez had actually begun approximately a week prior to the stop, when

PAGE 2         MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND
               STATEMENTS

Clackamas County law enforcement personnel received a tip from a confidential informant (CI) that Mr. Martinez-Rodriguez was dealing methamphetamine.  Two phone calls were set up between the CI and Mr. Martinez-Rodriguez, where they discussed in Spanish what officers believed to be Mr. Martinez-Rodriguez's plans to pick up more drugs in California. Based on the information from the CI and the phone calls, the officers obtained a search warrant on September 17, 2013.  That warrant authorized the "Release of Cell Site and Precision Location Information" from Target Telephone Number One 971-344-2372, based on information provided by a CI that Mr. Martinez-Rodriguez would be traveling south, to Southern California or Mexico, to "reload."  The warrant was obtained under provisions for Pen Register Orders (Or.Rev.Stat. 165.657 et seq. and 18 USC 2703(c), 3121-3126), and averred that there was probable cause "to believe that the crimes being investigated are prosecutable in Clackamas County, Oregon."

The warrant was sent to Mr. Martinez-Rodriguez's cell service provider and "pings" denoting his location were monitored until the stop of his vehicle in Salem, Oregon, on September 25.  The initial "ping" indicated that Mr. Martinez-Rodriguez was in Riverside, California.  According to government reports, DEA agents in Southern California were dispatched to verify that Mr. Martinez-Rodriguez was, indeed, there, and they and local

officers continued to monitor his movements on a regular basis.[1]  Once Mr. Martinez-Rodriguez crossed the border into Oregon, local officers were dispatched to follow him and his vehicle, following him off the freeway into Salem, where the stop was made after ostensibly observing a traffic violation.  A canine unit was present at the stop.

## ARGUMENT

**A.    The Police Monitoring of Mr. Martinez-Rodriguez's Vehicle While It Was Within the State of California Was Not Supported by the Oregon Search Warrant, and Thus Violated Mr. Martinez-Rodriguez's Fourth Amendment Right Against Unreasonable Searches.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added).  The particularity requirement of the Fourth Amendment "prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).  Nothing in the Clackamas County search warrant authorized local law enforcement to monitor Mr. Martinez-Rodriguez's movements outside of the state of Oregon.

A warrant issued by one state cannot authorize a search or seizure in another state. *See*, *e.g.*, *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir. 1981) ("Generally, an arrest warrant

---

[1]The defense has not yet received reports detailing the frequency of this monitoring, but it appears to have been several times a day, at the least.

issued in one state may not be lawfully executed in another."); *People v. Hamilton*, 666 P.2d 152, 154 (Colo. 1983) ("The common law of nineteenth century England recognized that the authority of a public official to execute a warrant was limited to the jurisdiction of the judicial officer issuing the warrant . . . ."); *State v. Bradley*, 679 P.2d 635, 637 (Idaho 1983) ("[I]t is a well-established principle of law that a warrant from one state has no force or validity outside the boundaries of that state."); *State v. Lee*, 738 P.2d 1081, 1083 (Wash. App. 1987) ("A warrant of arrest has no validity beyond the borders of the state by whose authority it was issued."); *State v. Everett*, 520 P.2d 301, 303 (Ariz. 1974) ("[A] warrant of arrest issued in one state can not be executed outside the boundary of the issuing state."); *People v. Coto*, 611 P.2d 969, 970 (Colo. 1980) (en banc) ("[T]he Florida warrant, relied upon by the prosecution, has no effect in this state except to provide the probable cause needed to make an arrest of the defendant."). Analogously, "American magistrates lack the power to issue extraterritorial warrants." *United States v. Vilar*, S305CR621KMK, 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007). *See also United States v. Verdugo-Urquidez*, 494 U.S. 259, 279 (1990) (Stevens, J., concurring) ("American magistrates have no power to authorize [foreign] searches.")

Oregon statutes also limit the jurisdictional reach of search warrants. In most cases, "a search warrant issued by a judge of a circuit court may be executed only within the judicial district in which the court is located." Or. Rev. Stat. § 133.545(1) (2011). Though

Oregon provides a special exception where a "warrant authorizes the installation or tracking of a mobile tracking device," allowing "the officer to track the device in any county to which it is transported," this authority does not extend to other states.  *Id.* § 133.545(2).  Although Clackamas County officers did not travel to California to personally monitor Mr. Martinez-Rodriguez's movements, they requested assistance from DEA agents.  They also continued to monitor "pings" on Mr. Martinez-Rodriguez's phone, are were clearly aware that he was not in the state of Oregon for much of their surveillance.

**B.    The Search Warrant Lacks Probable Cause to Believe That The Crimes Being Investigated Would Be Prosecutable in Clackamas County, Oregon.**

The search warrant in this case averred that  "the crimes being investigated are prosecutable in Clackamas County, Oregon."   However, at the time the CI spoke to Mr. Martinez-Rodriguez, there was no evidence that he was in fact in Clackamas County, Oregon, or that surveillance of him in California would lead to crimes which would be prosecutable in Clackamas County, Oregon.  In fact, he was stopped in Marion County and charges were filed there, prior to the case being referred for federal prosecution.

**C.    The Police Stop of Mr. Martinez-Rodriguez's Car Was Fruit of the Illegal Search and Must Be Suppressed.**

Once a Fourth Amendment violation has been established, the question becomes whether the evidence sought to be suppressed "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary

taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quotation omitted). If it is the former, the Court held in *Wong Sun*, the evidence must be suppressed as "fruit of the poisonous tree." *Id.* It is the prosecution that carries "the burden of showing that the evidence in question was admissible under *Wong Sun*." *Brown v. Illinois*, 422 U.S. 590, 604 (1975). In determining admissibility, the Court looks at three factors: 1) the passage of time between the illegal search and the obtainance of the evidence sought to be suppressed; 2) whether there was a significant intervening event; and 3) the "purpose and flagrancy" of the official misconduct. *Id.* This third factor is "particularly important." *New York v. Harris*, 495 U.S. 14, 23 (1990).

The facts of *United States v. Lee*, 862 F.Supp.2d 560 (E.D. Ky. 2012), are similar to the relevant facts of this case, and the conclusion reached there illuminates the necessity of suppression of the evidence here. In *Lee*, the DEA attached a GPS tracking device upon the defendant's car without a warrant, in response to an informant's tip that the defendant regularly drove from his home in Kentucky to Chicago to pick up marijuana. *Id.* at 562. After three days of monitoring his whereabouts, the DEA noticed that the defendant, Lee, had driven to Chicago and was returning towards Kentucky. *Id.* Suspecting that he was carrying illegal drugs, the DEA contacted a Kentucky State Police trooper, gave him a description of Lee's car, told him that it probably contained marijuana, and asked him to develop independent probable cause for a traffic stop. *Id.* The trooper stationed himself

along Lee's likely route, and when Lee drove by, the trooper observed that he was not wearing his seatbelt. *Id.* at 562–63. Possessing independent probable cause of a traffic violation, the trooper stopped Lee's car, applied a drug-detecting dog to the exterior, and thereby obtained probable cause to search the car when the dog alerted to the presence of drugs. *Id.* at 563.

Lee filed a motion to suppress the drug evidence based upon *Jones*. *Id.* The magistrate judge recommended suppression, and the district court agreed, finding that the GPS search required a warrant, that the good-faith exception did not apply, and that the stop of Lee's car, and subsequent discovery of marijuana, was not sufficiently attenuated from the unlawful GPS search so as to dissipate the taint of that illegality. *Id.* at 564–71. The *Lee* court applied the three factors from *Brown* in determining that the exclusionary rule applied, and determined that all three factors favored suppression. *Id.* at 564–65.

The *Lee* court's discussion of the second factor is particularly relevant here. It rejected the government's argument that the state trooper's independent observation of the seatbelt violation was an intervening circumstance that cut the causal connection between the illegal search, reasoning that the trooper "would never have been in a position to discover" the seatbelt violation but for the illegal GPS monitoring. *Id.* at 565–66. "Without the information gained by the illegal GPS tracking, [the trooper] would not have known where to find Lee, when to find him there, or that he should 'develop' probable cause to

stop him." *Id.* at 566. These statements are strikingly relevant to Mr. Martinez-Rodriguez's case, and *Lee* is indistinguishable on this point. Were it not for the illegal cell phone monitoring of Mr. Martinez-Rodriguez while in California immediately before he returned to Oregon, the police would not have been ready and waiting with their canine unit for Mr. Martinez-Rodriguez commit a minor traffic violation in Salem, Oregon. For the same reasons, the drug-detection dog's alert to Mr. Martinez-Rodriguez's car was not an intervening circumstance sufficient to cut the causal chain between the illegality and the discovery of contraband, and were themselves fruit of the poisonous tree. *See id.* (rejecting the government's contention that "the dog searches and Lee's confession could be intervening circumstances").

As for the third *Brown* factor, the court in *Lee* concluded that the DEA officers had an unlawful purpose in their conduct—this even though they attached the GPS tracker before the Supreme Court issued its opinion in *Jones. Lee*, 862 F.Supp.2d at 567. The court illustrated its point thusly: "if Lee's seatbelt violation were an intervening circumstance, police could install tracking devices with impunity so long as they waited until the subject of their surveillance commits a minor traffic violation." *Id.* The same could be said of cell-phone location tracking. This sort of "post-hoc rationalization" led to the court's inference that "the police misconduct was guided by an impermissible purpose." *Id.* The factors cited in *Brown* lead to the same conclusion in Mr. Martinez-Rodriguez's situation, where

unlawful cell phone monitoring of Mr. Martinez-Rodriguez's phone led to his being

followed in Oregon and ultimately stopped for an alleged traffic violation.

**D.     Other Grounds For Suppression of the Stop and Search of Mr. Martinez-Rodriguez's Vehicle Await Further Factual Development At the Evidentiary Hearing.**

After Mr. Martinez-Rodriguez's vehicle was stopped, he produced a Mexican

driver's license and was informed that he had failed to signal for a left turn.  He was asked

for consent to search the car, but he declined.   The car was searched anyway, and

contraband was discovered.  It is the government's burden to prove a lawful reason for the

search, given the lack of a warrant to search the car.   Further argument will be based on

the evidence adduced at the hearing.

**CONCLUSION**

For the reasons set forth above and those to be adduced at the evidentiary hearing,

defendant's Motion to Suppress Evidence and Statements should be granted.

RESPECTFULLY SUBMITTED this December 20, 2013.

_/s/ Ellen C. Pitcher_
Ellen C. Pitcher
Alison M. Clark
Of Attorneys for Defendant