IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 3:13-cr-00452-JO |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| OMAR MARTINEZ-RODRIGUEZ | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, Judge:

## INTRODUCTION

On October 1, 2013, the defendant, Omar Martinez-Rodriguez was indicted on one count of possession of more than 500 grams of methamphetamine with the intent to distribute. (#1) Thereafter, defendant filed a motion to suppress two categories of evidence. First, he seeks suppression of evidence obtained from September 18, 2013 through September 25, 2013 on the grounds that the search warrant should not have been issued and that the evidence obtained was outside the scope of the Clackamas County search warrant. Second, he asks the court to suppress evidence and statements obtained on September 25, 2013 during a warrantless search of defendant's vehicle and person on the grounds there was no probable cause to stop defendant's vehicle. (#37) I heard argument on the motion on January 6, 2014 and make the following findings of fact and conclusions of law.

## STANDARDS

The Fourth Amendment provides that "[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Amendment protects "people—and not simply 'areas'—against unreasonable searches and seizures." *Katz v. United States,* 389 U.S. 347, 353 (1967).  A valid search or seizure "requires adherence to judicial processes," and searches without a warrant are "per se unreasonable under the Fourth Amendment." *Id.* at 357.  However, law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *United States v. Hensley*, 469 U.S. 221, 226 (1985).  Where officers have probable cause to believe an automobile contains evidence of a crime, a search warrant does not need to be obtained prior to a search of the vehicle. *United States v. Alvarez,* 899 F.2d 833, 839 (9th Cir. 1990).  To help protect an individual's Fourth Amendment rights, courts apply the "exclusionary rule," which provides that evidence obtained in violation of the Fourth Amendment will be excluded from use against a defendant at trial. *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).  With those standards in mind, I turn to the facts in this case.

## FINDINGS OF FACT

In September 2013, the Clackamas County Interagency Task Force (Task Force) began investigating the defendant's actions.  With the help of a confidential informant (CI), Task Force Deputy Matrona Shadrin (Shadrin) identified defendant as a methamphetamine dealer and associated a particular phone number and Canby, Oregon address with defendant.  Shadrin

recorded a phone call made by the CI while the CI was in Clackamas County to defendant during which the CI attempted to purchase a half-ounce of methamphetamine. (Exh. 11) Defendant indicated he was out of town for a few days "loading up" (Exh. 11, p. 2), which Shadrin, a veteran sheriff with over 800 hours of training in drug interdictions, understood to mean defendant was resupplying his stock of methamphetamine. Based on the information Shadrin gleaned from the CI regarding his previous drug purchases from defendant at the Canby address and the information from the phone call, Shadrin prepared an affidavit and application for a search warrant authorizing the tracking of the cell phone associated with defendant. The application was vetted by a Clackamas County Deputy District Attorney and on September 18, 2013, Clackamas County Judge Kathie Steele reviewed and approved the search warrant authorizing the release of cell site and precision locations information for the cell phone associated with defendant. (Exh. 6) The warrant allowed for monitoring of the mobile device in "any county to which it is transported." (Exh. 6, p. 9)

Shadrin immediately provided the search warrant to the cell phone service provider and was informed that the phone was located in Riverside, California. The Task Force contacted the DEA agents in California who confirmed that a car associated with defendant was in Riverside. On September 24, the CI placed another call to defendant, who indicated that he was back at home in Oregon and that they could meet the next day. (Exh. 12, p. 1) This information was inconsistent with the information the Task Force obtained from tracking the cell phone. The Task Force continued monitoring the location of the phone by receiving geolocation information (cell phone "pings") every 15 minutes throughout the day as the phone traveled north along

Interstate 5.[1] (Exh. 10)  As the phone progressed through California, Task Force investigators traveled south to the Oregon-California border to begin the physical surveillance of the vehicle and person associated with the cell phone they were monitoring.  On September 25, 2013, at approximately 2:40 pm, the phone entered Oregon.  Ten minutes later, a Task Force member positively identified defendant driving a silver Ford Focus near Talent, Oregon.

Shadrin observed three "pings" emitted from the cell phone at the same location in Myrtle Creek, Oregon, indicating the phone was stationary.  The location was a rest stop along Interstate 5.  Shadrin arrived at the rest stop as a part of the surveillance team and observed defendant and a female passenger (later identified as Andrea Montalvo, defendant's wife) sitting at a table in the restaurant for several minutes before returning to a silver Ford Focus and driving north.  (Exhs. 8 and 9)  Investigators confirmed the Ford Focus was registered to Karen Martinez, defendant's sister, in Canby, Oregon.  The Task Force consisting of 5-6 unmarked vehicles continued its surveillance of defendant's cell phone and automobile for approximately 4 ½ hours over 250 miles when defendant's vehicle exited off Interstate 5 in Salem, Oregon.

At this point, Task Force Trooper Mathew Fromme, who had been designated as the "stop" car, was following defendant's vehicle along Swegle Road in Salem, Oregon.  Defendant made two turns, one from Swegle Road on to Neota Street and another from Neota Street on to

---

[1] The parties stipulated to the following with regards to cell phones:  "(1) an individual can turn off his cell phone in order to keep his location private; (2) in general, if a cell phone is on, the phone's location is known to the service provider as that information is critical for providing service; however, there may be certain phones that are capable of preventing location monitoring while on, and new technologies are developing in that regard every day.  Other than turning the phone off entirely, the government is not aware of any special technology in this defendant's phone (a Samsung SGH-a157, a basic flip phone) that could prevent/block the provider from capturing GPS/precision location information while the phone is on/active; and, (3) in general, cell phone providers do not provide the government with GPS/precision location information without a search warrant."  For a thorough discussion of cell phone tracking technology see *United States v. Caraballo,* ___F. Supp.2d ___, 2013 WL 4039028 (D. Vt. 2013) and *United States v. Skinner,* 690 F.3d 772 (6th Cir. 2012).

Fultz Street, without using his turn signal to indicate the turns in violation of Oregon Revised Statute § 811.335. Based on the traffic violations, Fromme initiated a traffic stop.

Fromme contacted the defendant and explained the reason for the stop. Defendant, who identified himself with a driver's license from Nayarit Mexico, acknowledged that he did not use a turn signal and was just turning around in the neighborhood. When Fromme asked defendant for an Oregon driver's license, defendant got annoyed and said his Mexican license was sufficient. Defendant was not forth coming with additional information requested by Fromme. It took three responses before Fromme elicited defendant's address. Defendant provided inconsistent responses to questions regarding how long defendant had been living in Canby. Fromme observed the interior of defendant's vehicle which contained items consistent with long-distance travel: pillows, lots of luggage and baggage, a shopping cart and an air freshener. (Exhs. 1-3) While Fromme conducted a records check of the vehicle registration and insurance, back-up units arrived, including Sgt. Paul Coleman, a trained canine handler, and Wodon, a certified narcotics detection dog.

Coleman and Wodon conducted an exterior sniff, first around Fromme's vehicle and then around defendant's Ford Focus. During the exterior sniff of defendant's vehicle, Wodon alerted to multiple areas, indicating the presence of narcotics. Wodon made a particularly strong alert at the rear passenger door of defendant's car, an area that appeared to have been dented and repaired. After placing Wodon back in his patrol car, Coleman approached defendant, told him of Wodon's alert to narcotics and asked if there were drugs in the vehicle. Defendant, appearing upset, denied there were drugs and refused permission to search the car.

Fromme and Coleman detained defendant and his wife and advised them of their (Fromme's and Coleman's) intention to search the vehicle. The contents of the vehicle were

removed from the back seat and Wodon was allowed to sniff the items. Wodon alerted to the two coolers, which upon opening, contained a total of 22 one-pound bricks of methamphetamine, having a street value of approximately $500,000. The officers also seized the cell phone from the vehicle that had the same phone number as the phone for which the warrant had been issued.

## CONCLUSIONS OF LAW

(1) The Search Warrant

Defendant contends that the search warrant should not have been issued because there was not sufficient evidence that the crimes being investigated would be prosecutable in Clackamas County Oregon. This has no merit. In her affidavit and application for the search warrant, Shadrin stated that the CI had purchased methamphetamine 5 times in the last two months at defendant's Canby apartment. Shadrin verified that defendant's apartment was located at 240 South Knott Street in Canby, Clackamas County, Oregon and that defendant had listed that address as his residence during a law enforcement contact. The CI place a phone call from within Clackamas County to defendant who agreed to sell to the CI when defendant returned.

Whether an affidavit sets forth sufficient facts to give rise to probable cause to believe that a crime will occur is based on the totality of circumstances. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). "Probable cause" means a fair probability, which in turn, is something less than preponderance. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). There was probable cause to believe that defendant and the CI committed, were preparing to commit or conspiring to commit the unlawful distribution of methamphetamine in Clackamas County.

Defendant also contends that the evidence obtained in California was outside the scope of the warrant and thus the contraband seized during the search of defendant's car must be suppressed as the fruit of a tainted search. *Wong Sun v. United States*, 371 U.S. 471 (1963). Both parties agree that the warrant was valid in all counties in Oregon, but not in California. The prosecution states that any data obtained outside of Oregon will not be used. Defendant argues that but for the data obtained in California, the Task Force would not have known when defendant was returning to Oregon, which route defendant was taking and would not have had surveillance teams in place to follow and observe defendant and conduct a traffic stop.

In determining whether the evidence should be suppressed, the Court looks at three factors: (1) the passage of time between when the illegal search occurred and when the evidence was obtained; (2) whether there was a significant intervening event; and (3) the "purpose and flagrancy" of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). The defense cites *United States v. Lee,* 862 F. Supp. 2d 560 (E.D. Ky. 2012) as a basis for suppression. In *Lee*, the DEA attached a GPS tracking device to defendant's car without first procuring a warrant. They monitored Lee's car for three days when they noticed he was returning to Kentucky and notified the Kentucky State trooper. The trooper stationed himself along Lee's likely route and when Lee drove by, the trooper noticed Lee was not wearing a seatbelt. Possessing independent probable cause of a traffic violation, the trooper stopped Lee's car and, with the help of a drug-detecting dog, obtained probable cause to search the car when the dog alerted to the presence of drugs. The court in *Lee* reasoned that but for the use of the GPS device, the trooper would never have been in a position to discover the seatbelt violation and suppressed the evidence as the fruit of an illegal search. *Lee*, 862 F. Supp. 2d at 571.

In this case, the law enforcement officers obtained a warrant to monitor the GPS located in the defendant's phone.  The cell phone was voluntarily placed in the vehicle by defendant, not by law enforcement officials, and was turned "on" by defendant allowing it to be tracked.  When the phone and the defendant entered Oregon, the Task Force members followed the defendant and the phone "pings" for 4 ½ hours and nearly 250 miles, all the while in compliance with the warrant.  During that time, the Task Force made independent observations and positively identified the defendant as the same person identified by the CI as Omar Martinez-Rodriguez.  Even if the officers had not received any of the "pings" from California, they still would have had ample opportunity and time to find the defendant based on the "pings" once defendant returned to Oregon.   I conclude that the traffic stop was sufficiently attenuated from the information gathered in California.

>    (2)    Probable Cause For The Automobile Stop

Temporary detention of individuals during the stop of an automobile by the police, even for a brief period and for a limited purpose, constitutes a seizure of persons under the Fourth Amendment. *United States v. Whren*, 517 U.S. 806, 809-10 (1996).  An automobile stop is subject to the constitutional imperative that it not be unreasonable under the circumstances and a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.  Id.

Defendant contends that Fromme lacked probable cause to believe a traffic violation occurred.  Fromme testified that he observed defendant make two turns without the use of a turn signal in violation of ORS § 811.335 (1)(b) (failure to signal).  Andrea Montalvo, defendant's wife, testified that defendant always used turn signals and that in this particular case she saw defendant use the turn signal and heard the sound the turn signal makes when making the turns.

As I stated at the hearing on this matter, I find Fromme's statements credible and Montalvo's statements not credible. He was in a position to observe defendant make the turns and his observation was corroborated by defendant's admission that he had not used the turn signal because he was just turning around in a neighborhood. Because I find Fromme had probable cause to believe a traffic violation occurred, his decision to stop defendant's vehicle was reasonable.

At the hearing, counsel for the defendant conceded that if there was probable cause for the traffic stop, the search incident to the traffic stop was legal. Following the traffic stop there was ample evidence to establish probable cause to search the vehicle: defendant provided vague and inconsistent responses to reasonable questions; defendant appeared nervous and uncooperative; the contents of the vehicle were consistent with the kinds of items Fromme had been taught drug traffickers often had; the car was registered to someone other than defendant; and, the drug detection canine positively alerted to the presence of narcotics in the vehicle. Because law enforcement officers had probable cause to believe defendant's car contained narcotics, they did not violate the Fourth Amendment by stopping the car and searching it.

## CONCLUSION

The police monitoring of the defendant's vehicle was supported by the valid Oregon search warrant. The stop of defendant's vehicle was reasonable because there was probable cause to believe a traffic violation occurred. Defendant's Fourth Amendment rights were not violated and therefore, defendant's Motion to Suppress (# 14) is DENIED.

DATED this ___10th___ day of January, 2014.

Hon. Robert E. Jones
Senior, District Court Judge