**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**STEVEN T. MYGRANT, OSB #03129**
Special Assistant United States Attorney
stevenmyg@co.clackamas.or.us
**LEAH K. BOLSTAD, OSB #05203**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:   (503) 727-1000
Facsimile:    (503) 727-1117
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:13-CR-00452-JO |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **OMAR MARTINEZ-RODRIGUEZ,** | |
| **Defendant.** | **Sentencing Date:** July 28, 2014 at 11:00 a.m. |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, Steven T. Mygrant, Special Assistant United States Attorney, and Leah K. Bolstad, Assistant United States Attorney, hereby submits the following sentencing memorandum.

**I.    GOVERNMENT'S SENTENCING RECOMMENDATION**

For the reasons set forth below, the government recommends that the Court impose a sentence of 300 months' imprisonment, a statutory minimum five year term of supervised release and a $100 fee assessment.   Such a sentence properly addresses the nature and seriousness of the

offense, provides just punishment, affords adequate deterrence and significantly protects the public from further crimes of this defendant.

## II.     SUMMARY OF PROCEEDINGS

On October 1, 2013, a federal grand jury returned a one-count indictment charging defendant with Possession with Intent to Distribute Methamphetamine in an amount exceeding 500 grams, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii). (CR 1).  At his arraignment on October 7, 2013, defendant entered a plea of not guilty, and the magistrate judge ordered defendant detained pending trial as he presented both a flight risk and a danger to the community.  (CR 6).  Defendant declined to waive his right to a speedy trial.  The magistrate judge set the Possession with Intent to Distribute Methamphetamine case for trial on December 10, 2013.

United Stated District Court Judge Robert E. Jones subsequently set a scheduling conference on November 25, 2013.  Defendant appeared in-custody with counsel, Ms. Pitcher. Ms. Pitcher represented that a motion to suppress evidence and statements would be filed on the methamphetamine distribution charge.  Defense counsel represented to the Court that the motion would be filed prior to the trial date of December 10, 2013.  The defense agreed that filing a motion to suppress on the methamphetamine distribution case would constitute excludable delay pursuant to United States Code 18, Section 3161(h)(1)(D).

On December 9, 2013, defendant filed a motion to suppress the physical evidence seized from defendant's vehicle and the statements he made to officers.  (CR 14).  The Court continued the case and made written findings that the continuance constitutes excludable delay from December 10, 2013 through January 22, 2014, pursuant to 18 U.S.C. § 3161(h)(7)(A).  The court specifically found that the ends of justice served by taking such action outweigh the best interests

**Government's Sentencing Memorandum**                                                                                           **Page 2**

of the public and defendant in a speedy trial because the additional time is necessary to afford defense counsel sufficient time to investigate the facts of this case, to negotiate with the government, and to prepare for pretrial motions and jury trial. The Court also scheduled a motion to suppress hearing on January 6, 2014.

At the suppression hearing, the government called several law enforcement witnesses to testify about the investigation and the circumstances of defendant's arrest on September 25, 2013. On January 10, 2014, the Court denied defendant's motion to suppress and published written Findings of Fact and Conclusions of Law (CR 30).

On January 22, 2014, Judge Jones empanelled a jury and the government called multiple witnesses to establish the criminal charge. Defendant called multiple witnesses at trial and contested the government's evidence as to each element of the offense. On January 24, 2014, a jury unanimously found the defendant guilty of Possession with the Intent to Distribute Methamphetamine in a quantity exceeding 500 grams of mixture or substance containing a detectable amount of methamphetamine.

The Court requested production of a Pre-Sentence Report (PSR). Both parties filed objections to the PSR. A revised PSR was published on July 10, 2014. Sentencing is currently scheduled for July 28, 2014 at 11 a.m.

### III.    FACTUAL BACKGROUND

In September 2013, Clackamas County Interagency Task Force (CCITF) investigators began a drug trafficking investigation involving a subject identified as Omar Martinez Rodriguez. CCITF Deputy Matrona Shadrin utilized a confidential informant (CI) to assist in the criminal investigation. The CI provided assistance in exchange for consideration on a pending felony

criminal charge. The CI identified his/her methamphetamine supplier as Omar Rodriguez with phone number 971-344-2372 and residence at 240 S Knott Street in Canby, Oregon.

### A. Recorded Phone Call

The CI agreed to make a recorded phone call to Martinez Rodriguez to arrange the purchase of methamphetamine. Deputy Shadrin monitored the recorded phone call and confirmed the CI dialed 971-344-2372. The defendant responded, "I need all the cash so I can pick up a load. I'm loading up again remember. If you would have told me sooner I would have been able to get it ready." PSR ¶ 6.

### B. Precision Location Warrant for Defendant's Phone

Following review of the translated call between the CI and Omar Martinez Rodriguez, Deputy Shadrin prepared an affidavit and search warrant authorizing release of cell site and precision location information for the AT&T mobile phone number of 971-344-2372. Based upon Deputy Shadrin's training and experience, she was familiar with the term "picking up a load" meaning a drug dealer is resupplying his stock of illegal controlled substances. On September 18, 2013, Clackamas County Circuit Court Judge Steele reviewed and approved the search warrant authorizing release of cell site and precision location information for the wireless phone number of 971-344-2372. PSR ¶ 7.

### C. Surveillance and Traffic Stop

On September 18, 2013, Deputy Shadrin faxed the approved search warrant to the cell phone provider. Shadrin received information that the phone was located in California. On September 25, 2013, Shadrin determined through the authorized monitoring of the phone's location that the mobile phone had entered into Oregon. PSR ¶ 8. CCITF investigators travelled

south to the Oregon-California border to begin physical surveillance of the vehicle and persons associated with the phone number of 971-344-2372.

On September 25, 2013, at approximately 2:50 p.m., CCITF investigators positively identified Omar Martinez Rodriguez driving a Ford Focus near Talent, Oregon.  PSR ¶ 9. Shadrin observed Rodriguez and a female stop at a gas station and sit at a table in a restaurant for several minutes before returning to the Ford Focus and driving northbound on Interstate 5. Investigators also confirmed the Ford Focus was registered to a Karen Martinez in Canby, Oregon. Deputy Shadrin was able to identify Karen Martinez as the sister of Omar Martinez Rodriguez. PSR ¶ 9.  Shadrin and CCITF members continued to monitor the location of the phone and followed the vehicle as it headed north.

At approximately 7:25 p.m., CCITF Trooper Mathew Fromme observed the 2000 Ford Focus travelling in Marion County eastbound on Swegle Road.  The vehicle turned northbound on Neota Street NE, but the driver failed to use a turn signal to make the turn, in violation of Oregon Revised Statute 811.335 (Failure to Signal).  Trooper Fromme also observed the driver failed to signal from Neota Street on to Fultz Street.  Based on the traffic violations, Trooper Fromme activated his emergency lights and initiated a traffic stop.  PSR ¶ 9.

Trooper Fromme contacted the driver and explained the reason for the stop.  The driver admitted he did not use a turn signal in making a turn.  Trooper Fromme asked the driver for his license, and the driver identified himself verbally and with a Nayarit, Mexico driver's license as Omar Martinez Rodriguez (the defendant).  PSR ¶ 10.  Fromme also contacted the front passenger, later identified as Andrea Montalvo.  Defendant was unable to provide proof of valid driving privileges in Oregon.  Defendant became argumentative with Trooper Fromme as to the validity of his driving privileges, stating that he had been stopped before and his Nayarit license

had not been a problem.  Fromme asked defendant if he lived in Salem, and defendant said he lived in Canby.  Defendant mumbled something twice before Trooper Fromme finally gleaned an address of "240 S Knot Street."  Defendant continued to argue that his Nayarit license was sufficient, and explained that he had only moved to Oregon from Nayarit a few days ago.  Trooper Fromme found defendant's statements to be inconsistent.  While speaking with the occupants of the vehicle, Trooper Fromme observed pillows (consistent with long-distance travel), air fresheners, and the backseat appeared full of baggage, with a shopping cart folded on top.

Trooper Fromme requested assistance from a cover officer.  Clackamas County Sergeants Paul Coleman and Brad O'Neil arrived to assist while Fromme conducted a records check. Sergeant Coleman is also trained as a canine handler.  He has a trained and certified narcotics detection dog.  While Fromme was conducting a records check, Coleman allowed his canine to conduct an exterior sniff around the Ford Focus.  During the exterior sniff of the vehicle, the canine positively alerted on multiple areas, indicating the presence of narcotics.  PSR ¶ 10. Coleman advised Trooper Fromme of the canine alert.

Sergeant Coleman then contacted Martinez Rodriguez and asked if he lived in Mexico. Defendant said no, and explained that he and his wife had just visited friends in California and were on their way home to Canby.  Sergeant Coleman told defendant of the canine's alert to narcotics within the vehicle.  Martinez Rodriguez denied any drugs were in the vehicle and denied consent to search.  *Id.* Coleman observed Martinez Rodriguez appeared very nervous and animated in his responses.

D.   **Search of the Vehicle**

Following the canine alerts to the presence of narcotics, the officers advised the two occupants of their intention to search the vehicle.  PSR ¶ 11.  The occupants were detained and

**Government's Sentencing Memorandum**                                                                                       **Page 6**

advised of their *Miranda* rights. Fromme and Coleman observed two coolers in the backseat of the vehicle, which were removed from the vehicle and the canine was allowed to sniff the exterior of these items. The canine alerted to a medium sized red plastic cooler. PSR ¶ 12. Trooper Fromme searched the cooler and removed 16 one-pound bricks of a crystalline substance that tested positive for methamphetamine. The canine also alerted to a second dark-colored soft-sided cooler. *Id.* Fromme searched this item and removed six additional bricks of a crystalline substance that tested positive for methamphetamine. Officers also seized the cell phone from the vehicle with the phone number of 971-344-2372 from the front female passenger, identified as Ms. Montalvo.

### E. Crime Lab Analysis

On October 3, 2013, Elizabeth Flannery, a forensic scientist with the Oregon State Crime Lab, began fingerprint analysis on the packaging containing the seized methamphetamine. Flannery found multiple latent prints in the plastic packaging and electrical tape used to package the methamphetamine. In an exhibit identified as "Bundle 1," Flannery successfully identified latent prints on a layer of black electrical tape. Two of these prints, identified as P-1 and P-3, were compared and individualized to Omar Martinez Rodriguez.

On December 3, 2013, Oregon State Crime Lab Forensic Scientist Darrel Hall completed his qualitative and quantitative analysis of the suspected methamphetamine. Hall confirmed the presence of methamphetamine in Bundle 1 (455 grams actual methamphetamine), Bundle 2 (442 grams actual methamphetamine), Bundle 3 (433 grams actual methamphetamine) and Bundle 4 (422 grams actual methamphetamine). Based on the aggregate weight (1,752 grams) of confirmed actual methamphetamine exceeding 1500 grams, Hall discontinued further analysis. PSR ¶ 12.

## IV.    SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing.  *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005).  The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence.  *See* 18 U.S.C. §3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007).  They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.  The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion.  *Peugh v. United States*, __ U.S. ___, 2013 WL 2459523, *9-10 (2013).  While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences."  *Id*.

The remaining statutory factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant.  18 U.S.C. §§3553(a)(1)-(2).  They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense.  18 U.S.C. §3553(a)(7); *see also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow.  The court must first correctly determine the applicable guideline range.  *Id*. at 991.  The court must also allow the parties to

"argue for a sentence they believe is appropriate," and must "consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Id*. The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. *Id*. The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id*. at 991-92.

V.  **RECOMMENDED SENTENCE**

    A.  **RELEVANT CONDUCT AND BASE OFFENSE LEVEL**

Defendant possessed approximately 22 pounds of methamphetamine. Specifically, he had 21 one-pound bricks and one half-pound brick of methamphetamine. Four of the one-pound bricks were analyzed and confirmed the presence of pure methamphetamine ranging in quantities ranging from 422 -455 grams, for a gross weight of 1,752 grams of actual methamphetamine in the bricks that were fully analyzed by the lab. PSR ¶ 12. The remaining 17 bricks were not analyzed because the quantity of 1,752 grams yielded a quantity of actual methamphetamine higher than the 1,500 gram threshold required for the highest possible base offense level – level 38.

    B.  **CRIMINAL HISTORY COMPUTATION**

The government agrees with the PSR computation of a criminal history score of three points based on convictions for Assault II (four counts), Assault III (five counts), Failure to Perform the Duties of a Driver, Recklessly Endangering Another Person and Driving Under the Influence of Intoxicants. PSR ¶ 33. Therefore, under U.S.S.G § 4A1.1 and Chapter 5, Part A, a corresponding criminal history category of II is proper. PSR ¶ 34.

//
//
//

**Government's Sentencing Memorandum**                                                                                 **Page 9**

### C.  MANDATORY MINIMUM SENTENCE

The government agrees with the PSR that 500 grams of a mixture of methamphetamine triggers a statutory mandatory minimum sentence of ten years pursuant to Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(viii).   PSR ¶ 58.

### D.  SAFETY VALVE

Defendant does not meet the criteria for safety valve eligibility because he has more than one criminal history point pursuant to USSG § 5C1.2(b)(1) and defendant failed to truthfully provide any information to the government concerning the offense pursuant to USSG § 5C1.2(b)(5).

### E.  ACCEPTANCE OF RESPONSIBILITY

Defendant does not qualify for any reduction for acceptance of responsibility pursuant to USSG § 3E1.1 because he put the government to its burden of proof at trial and has done nothing to "clearly demonstrate" acceptance of responsibility for his actions.   PSR ¶ 16, and *see Memo entitled Government Objections to the Draft PSR*.

### F.  ATTORNEY GENERAL TWO-LEVEL ADJUSTMENT

The Attorney General has adopted a department policy that drug quantity base offense levels should be reduced two levels if the defendant agrees on the record not to seek a further reduced sentence pursuant to 18 U.S.C. §3582(c) in the event the two-level reduction is adopted and made retroactive by the Sentencing Commission.   The government contacted defense counsel in this matter and inquired whether defendant would agree on the record not to seek a further reduced sentence later, in the event the two-level reduction is adopted and made retroactive by the Sentencing Commission.   Through defense counsel, defendant refused to make any waivers or concessions of his rights.   Therefore, absent a waiver by defendant, the government will not

recommend the Attorney General's two-level reduction of the base offense level at this time. There would be nothing to prevent defendant from seeking the same reduction later, once it is made final in November 2014.

### G.    GUIDELINE CALCULATION AND TOTAL OFFENSE LEVEL

The base offense level for offenses involving 1,500 grams or more of actual methamphetamine is level 38 pursuant to USSG §2D1.1.    Defendant has not earned any reductions nor is there a legal basis to seek an upward departure sentence.    The PSR contemplated defendant's stipulation to the Attorney General's two-level base offense reduction for drug quantities.    PSR ¶ 18, 23, 26 and 58.    However, as stated previously, the government cannot recommend the reduction absent defendant's agreement to forego additional motions for future reductions under 18 U.S.C. § 3582(c)(2).    Therefore the government calculates a Total Offense Level 38, criminal history category II, resulting in an advisory guideline range of 262-327.

### H.    THE UNITED STATES' RECOMMENDED SENTENCE

Defendant stands before the Court facing a guideline sentence of 262-327 months. Defendant engaged in a substantial methamphetamine trafficking operation in which more than 20 pounds (~ 9,080 grams) of crystal methamphetamine were seized from his vehicle.    The sentencing guidelines proscribe the highest base offense level for merely 1,500 grams or more of actual methamphetamine.    It is estimated that the defendant possessed approximately 9,000 grams of actual methamphetamine.    This quantity of actual methamphetamine is more than five times the threshold (1,500) required to achieve the highest possible base offense level contemplated by the sentencing guidelines.    There is no drug quantity table that captures the scope and magnitude of the quantity of methamphetamine defendant trafficked into the District of Oregon.

It is anticipated defendant will present himself as a simple "mule" or "courier" for a drug trafficking organization. There is no evidence to support this assertion. Instead, the evidence clearly showed defendant was actively engaged in selling methamphetamine through his taped phone conversations with the government's cooperating informant. At trial, defendant presented his own wife and mother as witnesses in an attempt to explain away these conversations with the utterly incredible tale that he was merely involved the sale of car parts or Mexican desserts or alcohol. This explanation was dismissed by the jury's verdict, in which defendant was found guilty of possessing with the intent to distribute more than twenty pounds of methamphetamine.

Defendant's criminal activity is not an aberration nor an isolated incident. Instead, defendant has engaged in a pattern of criminal behavior that began with misdemeanor convictions for Unlawful Possession of Marijuana, Failure to Appear and False Information to a Peace Officer between 1999 and 2001. PSR ¶ 29-31. In 2004, defendant's criminal behavior escalated into serious felony crimes of violence as evidenced by his multiple convictions for Assault II and Assault III. PSR ¶ 32. Defendant served several years in prison for these convictions and was ultimately released in February 2010 from the Oregon Department of Corrections to ICE custody. *Id*. Defendant was subsequently deported to Mexico. Following deportation, defendant illegally reentered the United States in 2013. Defendant was subsequently charged criminally for Illegal Reentry, pursuant to Title 8, U.S.C., Section 1326(a). Based on a procedural defect, the federal criminal action was dismissed and defendant was again deported back to Mexico in 2013. Defendant once again unlawfully reentered the United States for the second time in 2013, and engaged in drug trafficking immediately upon his return. He quickly reestablished ties and was arrested on the instant offense on September 25, 2013. PSR ¶ 35.

Since defendant's arrest in September 2013, he has provided the government with no facts in mitigation to warrant a departure or variance from the guideline sentence. As referenced in *Carty* and *Gall,* the Court certainly has the ability to decide whether an outside-Guidelines sentence is warranted. However, the government asserts no justification is sufficiently compelling to support any form of departure or variance from the guideline sentence. Many defendants appear before the Court charged with serious narcotics related offenses. Many of these defendants choose to accept responsibility and earn reductions through substantial assistance under Rule 5K1.1  This defendant has done nothing to merit a sentence less than that proscribed by the sentencing guidelines. Any variance from the guidelines would be a disservice to those defendants who choose to accept responsibility and place themselves in dangerous positions through cooperation. Instead, it is the government's position that a mid-range term of 300 months' imprisonment, followed by 5 years of supervised release, will provide necessary deterrence, punishment and community protection.

## VI.   CONCLUSION

The arrest of Omar Martinez-Rodriguez and the seizure of more than twenty pounds of methamphetamine marked the culmination of a significant investigation by the Clackamas County Interagency Task Force. The quantity of methamphetamine seized merits the imposition of a guideline sentence. Defendant's significant criminal history again reinforces the basis for the imposition of a guideline sentence. Defendant has resisted all offers to gain sentencing concessions through acceptance of responsibility. He has challenged the government's case on every level with full knowledge of the consequences of the sentencing guidelines. Defendant offers no compelling mitigation to justify a departure from the guideline sentence. For the reasons set forth above, the government urges the Court to find that a sentence of 300 months'

imprisonment, followed by a minimum of five years of supervised release, and a fee assessment of $100 satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

DATED this 23rd day of July, 2014.

        Respectfully submitted,

        S. AMANDA MARSHALL
        United States Attorney

        *s/ Steven T. Mygrant*
        STEVEN T. MYGRANT, OSB #03129
        Special Assistant United States Attorney

        *s/ Leah K. Bolstad*
        LEAH K. BOLSTAD, OSB #05203
        Assistant United States Attorney